IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:14-CV-242-RJ

LARRY DOUGLAS THOMPSON,       )
                              )
    Plaintiff/Claimant,       )
                              )
                              )
        v.                    )         O R D E R
                              )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social Security, )
                              )
    Defendant.                )

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-31, DE-33] pursuant to Fed. R. Civ. P. 12(c). Claimant Larry Douglas Thompson ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is upheld.

**I. STATEMENT OF THE CASE**

Claimant protectively filed an application for a period of disability and SSI on October 14, 2010, alleging disability beginning July 1, 2009. (R. 263-68). His claim was denied initially and upon reconsideration. (R. 73-101). A hearing before an Administrative Law Judge ("ALJ") was originally scheduled for December 6, 2012 (R. 169-95), but neither Claimant nor Claimant's representative was present at the appointed time and the ALJ dismissed Claimant's request for

hearing on December 7, 2012. (R. 102-06). Claimant filed a response (R. 208-12), and on March 7, 2013, the Appeals Council remanded the case for the ALJ to determine whether Claimant had shown good cause for not appearing at the hearing, and if so, to give Claimant another opportunity for a hearing. (R. 107-10). Finding good cause for the earlier failure to appear, another ALJ held a hearing on October 10, 2013, at which Claimant was represented by counsel. (R. 29-56). At the hearing, Claimant amended his alleged onset date to September 17, 2009.[1] (R. 35). On January 6, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 10-28). On October 30, 2014, the Appeals Council denied Claimant's request for review. (R. 1-6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial

---

[1] In his decision, the ALJ lists the alleged onset date as July 1, 2009, but then states that he considered whether Claimant was disabled since September 16, 2010. (R. 13). These dates are not challenged by the parties and do not appear to be material to the consideration of whether substantial evidence supports the ALJ's decision.

2

evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration,

3

persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

In this case, Claimant alleges that the ALJ failed to properly weigh the opinion evidence, the limitation to unskilled work does not account for the moderate limitation the ALJ found Claimant had in maintaining concentration, persistence, or pace, and the ALJ erred by applying the Medical-Vocational Guidelines ("the Grids"). Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") [DE-32] at 4-20.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 15). Next, the ALJ determined Claimant had the following severe impairments: obesity, seizure disorder, lumbar spine degenerative disc disease, chronic kidney stones and urinary tract infections, and depressive disorder. *Id.* The ALJ also found Claimant had nonsevere impairments of migraine headaches, hypertension, and an incisional hernia. (R. 15-16). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in his activities of daily living and social functioning, moderate limitations in concentration, persistence, and pace, and no episodes of decompensation. (R. 20).

4

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a reduced range of sedentary work,[2] limited to the performance of unskilled work. In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 17, 22-23).

At step four, the ALJ concluded Claimant did not have any past relevant work. (R. 27). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 28).

## B.   Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 35 years old and living with his 14-year-old son. (R. 34). Claimant is 5'9" and weighs 300 pounds, although he stated that he should weigh 225 pounds. *Id.* Claimant testified that his weight fluctuates and six months ago he weighed 280 pounds. (R. 34-35). Claimant attained an 11th grade education and believed he only made it that far in school due to the No Child Left Behind program. (R. 36-37). Claimant had been in special education classes since he was five years old. (R. 37). Claimant stated that he can "read the basics" but would not be able to read the headlines in a newspaper. *Id.* Claimant and his son currently live on his parents' property, and his parents pay the water and electricity bills. (R. 37-38).

---

[2]  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

Claimant stated, however, that when he lives with a girlfriend, he has been shown how to pay his bills and knows how to pay his water and electricity bills. (R. 38). Claimant does not own a computer and cannot use one. *Id.* Claimant can print to write a basic letter, but cannot write in cursive, and can exchange money. *Id.*

Claimant last had a full-time job in 2008, where he worked for a year and a half as a first mate on a commercial fishing boat. (R. 38-40). Claimant testified that he had to be able to move 100 pounds at a time of heavy equipment and nets. (R. 39). Claimant stopped working due to kidney stones and back problems, and has not worked since. (R. 40). Claimant has had two back surgeries, and had his right kidney removed in 2009 (which contained a kidney stone the size of a golf ball). (R. 40-41). Claimant has also had several surgeries on his left kidney, including one to remove a kidney stone the size of a silver dollar. (R. 41). Claimant believes he will have to have surgery on both his back and his kidney in the future. (R. 41-42). Claimant is not on dialysis, but takes medication to prevent kidney stones from growing. (R. 42). Claimant also has hypertension, and testified that his medication keeps it "somewhat" under control. *Id.*

Claimant has chronic pain, which he testified is constant and is worse when he walks a lot. (R. 42-43). Bending or twisting hurts because of Claimant's kidney stones, and Claimant has bulging herniated discs in his back that bother him if he sits for too long. (R. 43). Claimant is able to get some pain relief by lying down with no noise and no one around. *Id.* Claimant takes pain medication, which gives him some pain relief, but he is afraid to increase the dosage because he does not want to become addicted to the medication. *Id.* Claimant takes 11 different medications, and testified that there are "almost 10 different side effects to each medication[,]" with the most severe side effects being panic attacks, anxiety, and hypertension. (R. 44). Claimant has panic attacks three

6

to four times in a typical month. *Id.* Claimant's pain leads to stress, which leads to panic attacks and more hypertension. *Id.* During a panic attack, Claimant has trouble breathing and being around others, and his blood pressure rises. (R. 45). Claimant has had four individual counseling sessions with a psychiatrist, and his last session was in August of 2013. (R. 45-46).

During the daytime, Claimant can sit for 20 minutes at a time in his recliner, before having to get up and walk for five minutes and then lying down for a couple of hours. (R. 46). Claimant estimated that he can walk for half of a block before having to stop. (R. 47). Claimant uses a cane all of the time, which was prescribed by his doctor along with a walker and a seat for the bathtub. *Id.* Claimant uses the walker for when his back and leg go out, which he testified happens six to ten times every month. (R. 47-48). Claimant also has a handicapped sticker for his car. (R. 48). Claimant can stand for 10 minutes before needing to sit, and cannot climb a flight of stairs. *Id.* Clamant's doctor told him not to do any lifting, but Claimant stated that he can lift five to ten pounds. *Id.* Claimant uses the shower seat every time he takes a shower, and can get dressed by himself after his son brings him his clothes, but cannot tie his shoes. (R. 49). Claimant is able to use the bathroom without assistance. *Id.*

Claimant has severe migraine headaches six times in a typical month, which start at the base of his skull. (R. 50). Claimant stays in a dark room with a cold rag on his head until the headache goes away, and sometimes has to go to the emergency room or to his primary care doctor for his headaches. *Id.* Claimant sees a doctor monthly, and is currently taking oxycodone and diazepam for his migraines, but they do not control his pain. *Id.* Claimant has trouble sleeping and takes trazodone. (R. 51). On average, Claimant sleeps for three hours before waking up for 30 to 40 minutes, then goes back to sleep for an hour to an hour and a half. *Id.* Claimant tosses and turns

7

during the night, and has nightmares as a result of one of his medications. *Id.* Due to the lack of sleep, Claimant has trouble focusing during the day, and by the time he is able to concentrate, the day is largely over. (R. 51-52). Claimant has to nap during the day because he experiences drowsiness from his medications, along with drymouth and difficulty concentrating, talking, and functioning. (R. 52). Claimant testified that he cannot pay attention to television or a movie any more. (R. 52-53). Claimant's son is 14 years old, and Claimant's mother comes over in the mornings to ensure that Claimant takes his medication and Claimant's son is up for school. (R. 53). After Claimant takes his medication in the morning, he has to get back into bed to nap. *Id.* Claimant does not enjoy being around others, even his son, and prefers to be alone in a quiet room. (R. 53-54). Claimant does not go to the mall or attend ball games, because he cannot handle the pain of sitting in the bleachers and the anxiety of being surrounded by people. (R. 54). Claimant would like to be able to watch a game, but cannot because of his pain. *Id.* Claimant believes his impairments have been getting worse. *Id.*

Dr. Wells Brown, a Vocational Expert, was present at the hearing but did not testify.

## V.  DISCUSSION

### A.    The ALJ's Consideration of the Medical Opinion Evidence

Claimant contends that the ALJ erred in evaluating the medical opinion evidence, specifically the opinions of Dr. Shelton, Dr. Boyette, and the opinions of the non-examining agency reviewers. Pl.'s Mem. [DE-32] at 5-12, 14-18. In response, the Government argues that substantial evidence supports the ALJ's consideration of the medical opinion evidence. Def.'s Mem. [DE-34] at 12-21.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical

8

source than to the opinion of a non-examining source. *Id.* § 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* § 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The ALJ is not required, however, to discuss all of these factors. *Ware v. Astrue*, No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012) (unpublished) (citing *Oldham v. Astrue*, 509 F. 3d 1254, 1258 (10th Cir. 2007); *Munson v. Astrue*, No. 5:08-CV-110-D(3), 2008 WL 5190490, at *3 (E.D.N.C. Dec. 8, 2008) (unpublished)). While an ALJ is under no obligation

9

to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (unpublished), he must nevertheless explain the weight afforded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8.

### i.    Dr. Shelton's Opinion

On December 11, 2010, Dr. Shelton performed a psychological consultative examination of Claimant and issued a written opinion. (R. 437-39). Claimant argues that the ALJ erred in weighing Dr. Shelton's opinion by failing to discuss all of the factors required by 20 C.F.R. § 416.927, by failing to consider that Dr. Shelton is a "double specialist" as he is a psychologist and an expert in Social Security disability evaluation, by failing to "accept and include or reject and explain" Dr. Shelton's opinion, and by improperly rejecting parts of Dr. Shelton's opinion for lack of supporting evidence. Pl.'s Mem. [DE-32] at 7-10.

The ALJ discussed Dr. Shelton's opinion, along with the other psychological opinion evidence, as part of the step two analysis. As an initial matter, the ALJ's decision must be read as a whole and it is not dispositive at which step certain evidence is discussed. *See Harley v. Colvin*, No. 5:14-CV-853-D, 2015 WL 9699531, at *10 (E.D.N.C. Dec. 2, 2015) (unpublished) (concluding the relevance of findings in the ALJ's decision was not negated because they appeared at a different step of the sequential evaluation where "the ALJ's decision must be read as a whole") (citation omitted), *adopted by* 2016 WL 126372 (E.D.N.C. Jan. 11, 2016). The ALJ discussed Dr. Shelton's opinion as follows:

On December 11, 2010, Robert Shelton, Psy.D., completed a psychological

10

consultative examination. During his interview, he noted the claimant's reports of chronic pain, sadness, isolation, poor sleep, and fatigue. The claimant admitted that Cymbalta improved these symptoms. On exam, the claimant showed decreased memory and concentration and attention abilities. He was able to recite five digits forward and three digits backward in digit-span testing, which is essentially average performance. He recalled three out of five objects after a five-minute delay, which shows some but not great deficit in recall. He performed addition and subtraction without error, but said he was unable to perform multiplication or serial seven subtraction. Dr. Shelton diagnosed depressive disorder, not otherwise specified, and assigned a Global Assessment of Functioning score of 52, indicating moderate symptoms or moderate difficulty in social or occupation functioning. He opined the claimant was able to understand, retain, and follow instructions, but said the claimant may have difficulty sustaining the attention needed to perform simple, repetitive tasks. Dr. Shelton opined the claimant may have decreased social functioning and frustration tolerance due to his reported chronic pain, as well as limited ability to tolerate the stress and pressures of day-to-day work activity (Exhibit B7F).

Dr. Shelton's assessment is given significant weight. His opinion that the claimant would be able to understand, retain, and follow instructions is given great weight because it is consistent with the claimant's performance during Dr. Shelton's testing, his past work history, his lack of mental health treatment (or recommendations for such treatment), and his demonstrated ability to read and write (*See* the last few pages of Exhibit B5F for examples of the claimant's writing). His opinions that the claimant may have some difficulty with social functioning, stress tolerance, and sustaining attention to perform simple tasks are given little weight because they are inconsistent with the lack of evidence of record showing significant interpersonal difficulties, the claimant's past work history, and the claimant's ability to live with and provide primary care for (and hold primary custody over) his minor son.

(R. 18).

Claimant argues that the ALJ erred by crediting only certain limitations in Dr. Shelton's opinion, as the ALJ must either "accept and include or reject and explain." Pl.'s Mem. [DE-32] at 9. In support of this proposition, Claimant cites to *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (citing *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) ("An ALJ may not select and discuss only that evidence that favors his ultimate conclusion . . . .")). Claimant's reliance on *Hines*, however, is misplaced. There, the Fourth Circuit discussed how an ALJ erred by selectively

11

describing a claimant's activities of daily living and leaving out the claimant's explanation that he tried to do certain activities but often was unable to complete them due to his pain. *Hines*, 453 F.3d at 565-66 ("The ALJ selectively cited evidence concerning tasks which Mr. Hines was capable of performing . . . . [t]his recitation of the evidence ignores Mr. Hines' further testimony that he has pain 'mostly all the time' and that taking Darvocet 'mak[es] it feel better and it's not really gone.'"). The *Hines* opinion did not address consideration of medical opinion evidence, and further, Claimant's argument that the ALJ must accept and include or reject and explain is without merit. "The ALJ is not required to conform the RFC to include every limitation in [a medical] opinion, provided the decision sufficiently reflects the ALJ's reasoning and is supported by substantial evidence." *Bundy v. Colvin*, No. 5:14-CV-55-FL, 2015 WL 450915, at *5 (E.D.N.C. Feb. 3, 2015) (unpublished) (citing *Armentrout v. Astrue*, No. 3:10CV504, 2011 WL 4625931, at *7 (E.D. Va. June 2, 2011) (unpublished) ("While the ALJ assigned 'significant' probative weight to the opinion, the ALJ was not then required to adopt every limitation and incorporate them into the RFC analysis."), *adopted by* 2011 WL 4625912 (E.D. Va. Oct. 3, 2011)). The question for this court is thus whether the ALJ's discussion of Dr. Shelton's opinion "is adequate for the court to conduct a meaningful review." *Id.*

Claimant contends that the ALJ erred by failing to discuss all of the factors set forth in 20 C.F.R. § 416.927, particularly by failing to consider that Dr. Shelton is a "double specialist" as he is both a psychologist and an expert in Social Security disability evaluation. Pl.'s Mem. [DE-32] at 8-10. The ALJ is not required, however, to discuss all of these factors, and Claimant's argument as to this point is without merit. *Ware*, 2012 WL 6645000, at *2. Claimant also argues that the ALJ erred by rejecting Dr. Shelton's opinion for being inconsistent with Claimant's work history and

12

provision of primary care for his son, when the opinion shows that Dr. Shelton was aware of these facts at the time the consultative examination took place. Pl.'s Mem. [DE-32] at 9-10. Similarly, Claimant argues that the ALJ impermissibly rejected Dr. Shelton's opinion for being inconsistent with the lack of evidence showing interpersonal difficulties when the very reason consultative examinations are sought is to address the insufficiency of the evidence. *Id.* Claimant's arguments here impermissibly ask this court to re-weigh the evidence and substitute its own conclusions for those of the Commissioner. *Hays v. Sullivan*, 907 F. 2d 1453, 1456 (4th Cir. 1990). The issue for determination is whether substantial evidence supports the ALJ's consideration of Dr. Shelton's opinion. *Bundy*, 2015 WL 450915, at *5. "An ALJ's determination as to the weight assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(d) (1998)." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (unpublished).

Here, substantial evidence supports the ALJ's stated reasons for crediting parts of Dr. Shelton's consultative opinion and discounting others. The ALJ gave great weight to Dr. Shelton's opinion that Claimant would be able to understand, retain, and follow instructions, as it was consistent with Claimant's performance during Dr. Shelton's testing, Claimant's past work history, Claimant's lack of mental health treatment or recommendations for treatment, and Claimant's ability to read and write. (R. 18). Indeed, the record evidence demonstrates that during testing with Dr. Shelton, Claimant was able to recite five digits forward and three digits backward in digit-span testing, recall three of five objects after a five-minute delay, and perform addition and subtraction but not multiplication, which Dr. Shelton depicted as adequate immediate retention and recall,

13

delayed recall, and adequate recent memory, although he noted that Claimant's attention and concentration were poor. (R. 438-39). Additionally, Claimant testified that he last worked as the first mate on a commercial fishing boat and stopped working because he was injured and did not mention having difficulties interacting with his co-workers. (R. 39-40). A review of Claimant's medical records demonstrates that while his treatment notes mentioned that he had depression and anxiety and listed prescription medications to address those conditions, Claimant was never recommended for further mental health treatment, despite being referred by his primary physician to outside providers for other services. *See* (R. 475-April 25, 2011 treatment note indicating Claimant was being referred to a spinal specialty practice); (R. 464-November 7, 2011 treatment note indicating Claimant was referred to Renee Johnson for a herniated nucleus pulposus); (R. 787-November 16, 2012 treatment note indicating Claimant was referred to Dr. McGuire for hernia surgery). Finally, the record contains examples of Claimant's handwriting, demonstrating his ability to read and write, as discussed by the ALJ. (R. 304-11, 418-19).

The ALJ gave little weight to Dr. Shelton's opinions that Claimant may have difficulty with social functioning, stress tolerance, and sustaining attention to perform simple tasks because those limitations were inconsistent with the lack of evidence showing Claimant had difficulties interacting with others, Claimant's work history, and the fact that Claimant lived with and was the primary caretaker for his minor son. (R. 18). Again, Claimant testified that he stopped working after an injury and not because of difficulties interacting with coworkers, and testified that he lived with and had custody of his minor son. (R. 34, 39-40). Additionally, the record evidence does not show that Claimant had difficulty interacting with others outside of the employment context. In an adult function report, Claimant stated that he lives with his sister, cares for his son, talks on the phone

14

every so often, goes to church every Sunday, and has no problems getting along with family, friends, neighbors, and authority figures, but did state that he was laid off from an unidentified job because he could not get along with others. (R. 304-11). Claimant also reported to Dr. Shelton that he has one friend and a few acquaintances he keeps in contact with and he has been engaged to a woman for six years. (R. 438). Despite Claimant's contention that "[it] is entirely illogical to reject Dr. Shelton's opinion for lack of supporting evidence when his opinion was obtained *specifically because of* the insufficiency of evidence[,]" Pl.'s Mem. [DE-32] at 10, this argument is without merit where the consistency and supportability of a physician's opinion are factors that are properly considered pursuant to 20 C.F.R. § 416.927. *See Johnson*, 434 F.3d at 654. Accordingly, where the record evidence supports the reasons given by the ALJ to credit or discount parts of Dr. Shelton's opinion, substantial evidence supports the ALJ's consideration of Dr. Shelton's opinion.

### ii. Dr. Boyette's Opinion

Dr. Boyette, Claimant's treating physician, completed a medical source statement on February 19, 2013. (R. 803-10). Claimant argues that the ALJ erred by failing to consider that Dr. Boyette's opinion was consistent with Dr. Shelton's opinion, mistakenly categorized Dr. Boyette's treatment as conservative, improperly relied on Claimant's daily activities when Claimant could not successfully perform those activities, and improperly concluded that the upper extremity limitations imposed by Dr. Boyette were not supported by complaints or objective findings. Pl.'s Mem. [DE-32] at 8, 10, 16-17.

The ALJ discussed Dr. Boyette's opinion as to Claimant's mental functioning as follows:

The mental functioning medical source statement from primary care physician C.O. Boyette, M.D., completed on February 19, 2013, has been considered. Dr. Boyette opined the claimant experienced many depressive symptoms such as anhedonia, sleep

15

disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, and delusions. Dr. Boyette concluded the claimant had marked restriction in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. His form defined "marked" as "[a]n impairment which (sic) seriously affects ability to function independently, appropriately and effectively." In handwritten comments at the end of his form, Dr. Boyette noted the claimant had various other (all physical) impairments, all of which (including the depression) were "not fixable." He concluded the claimant was totally and permanently disabled (Exhibit B23F).

I give Dr. Boyette's assessment little weight. First, Dr. Boyette is not a mental health specialist, he is a family medicine specialist and provides primary medical care. Thus, he does not have the specialized expertise such sources possess that renders their opinions of mental functioning more germane. Second, and more importantly, Dr. Boyette's opinions are not supported by other evidence of record, including his own treatment notes. As mentioned above, the claimant rarely brought mental complaints when receiving treatment from Dr. Boyette. When he did mention symptoms, he usually mentioned only poor sleep and low energy. There is no indication the claimant reported or was noted to be experiencing delusions in Dr. Boyette's treatment notes, a symptom he said the claimant experienced in this statement. His opinions of marked limitations are not supported by Dr. Boyette's limited, conservative, and consistent treatment, which was limited to prescription of anti-depressant and sleep aid medication. Further these opinions are not consistent with Dr. Boyette's failure to recommend mental health specialist intervention.

(R. 18-19). As to Dr. Boyette's opinion about Claimant's physical functioning, the ALJ stated:

Dr. Boyette also offered a medical source statement regarding the claimant's physical functioning on February 19, 2013. In that statement, Dr. Boyette opined the claimant had a poor prognosis and was limited by multiple symptoms including fatigue, pain, and weakness. Dr. Boyette remarked the claimant's pain was constantly severe enough to interfere with his concentration and attention such that he would not be able to perform simple work tasks. He said the claimant could stand and walk only five minutes at a time, could sit only five minutes before having to shift position, could sit four hours total in an eight-hour workday, stand one hour total in an eight-hour workday, and walk one hour total in an eight-hour workday. He opined the claimant could not perform repetitive reaching, handling, or fingering with his arms or perform any pushing or pulling with his arms. He said the claimant could perform simple grasping 30 percent of the time and fine manipulation 40 percent of the time with both hands. Dr. Boyette stated the claimant could not perform repetitive use of foot controls, and was limited to lifting 10 pounds frequently and 20 pounds occasionally, with carrying limited to 5 pounds frequently and 20 pounds occasionally. Dr. Boyette stated the claimant could occasionally bend and never

16

perform squatting, crawling, or climbing. He said the claimant could have no exposure to unprotected heights or moving machinery, marked changes in humidity or temperature, and said the claimant could never operate motor vehicles. He found moderate restriction to exposure to pulmonary irritants. Finally, Dr. Boyette concluded the claimant was totally disabled, had "advanced" degenerative disc disease, and that his symptoms were not amenable to treatment (Exhibit B24F).

I give little weight to Dr. Boyette's assessment. Though a treating source, Dr. Boyette's assessment is not entitled to controlling or even significant weight because it is inconsistent with a great amount of other evidence of record. His driving restriction is not supported by the claimant's recent driving (*See* Exhibit B27F). His standing and walking restrictions, as well as upper extremity restrictions are inconsistent with the claimant's recent use of a bushax and other activities performed in June 2013 and leading to acute injuries. The manipulative and other upper extremity limitations are not supported by any complaints or objective findings showing pain or dysfunctions in the arms.

(R. 26-27).

As to Dr. Boyette's opinion regarding Claimant's mental issues, while Claimant argues that the ALJ erred by failing to discuss that Dr. Boyette's opinion was consistent with Dr. Shelton's opinion, as addressed above, the ALJ is not required to explicitly discuss all of the factors laid out in 20 C.F.R. § 416.927, and Claimant's argument as to this point is without merit. *Ware*, 2012 WL 6645000, at *2. Claimant also argues that the ALJ erred by mischaracterizing Dr. Boyette's treatment of Claimant as conservative, when in actuality "the prescription of anti-depressant and sleep aid medication is actually *more* significant because Dr. Boyette is not a specialist." Pl.'s Mem. [DE-32] at 10. Claimant's argument asks the court to re-weigh the evidence already considered by the ALJ, which the court may not do. *Hays*, 907 F. 2d at 1456. The issue for determination is whether substantial evidence supports the ALJ's consideration of Dr. Boyette's opinion. *Bundy*, 2015 WL 450915, at *5. The ALJ noted that Claimant rarely complained of mental health issues to Dr. Boyette, and when he did so, Claimant complained of poor sleep and low energy; there was no

17

indication in Dr. Boyette's treatment notes that Claimant suffered from delusions, which Dr. Boyette marked in the assessment; despite opining that Claimant had marked symptoms, Dr. Boyette continuously recommended "limited, conservative, and consistent treatment" of anti-depressant and sleep aid medications; and Dr. Boyette never recommended further mental health treatment. (R. 19). A review of Dr. Boyette's treatment notes illustrates that Claimant never complained of delusions, and Claimant's complaints of mental health issues were limited to complaints of decreased energy and poor sleep, despite consistent notations by Dr. Boyette that Claimant had anxiety and depression. *See* (R. 465-October 10, 2011 treatment note where Claimant complained of decreased energy and poor sleep). And as discussed above, Claimant was never recommended for further mental health treatment, despite being referred by Dr. Boyette to outside providers for other services. *See* (R. 475-April 25, 2011 treatment note indicating Claimant was being referred to a spinal specialty practice); (R. 464-November 7, 2011 treatment note indicating Claimant was referred to Renee Johnson for a herniated nucleus pulposus); (R. 787-November 16, 2012 treatment note indicating Claimant was referred to Dr. McGuire for hernia surgery). Finally, while Claimant asks the court to determine that Dr. Boyette's treatment of Claimant was not conservative, there is nothing unreasonable about the ALJ's inference that Claimant's treatment was conservative where Dr. Boyette did not recommend mental health treatment and consistently prescribed prescription anti-depressants and sleep aids, and this is a proper basis for discounting Dr. Boyette's opinion. *See Richardson v. Colvin*, No. 4:14-CV-00125-FL, 2015 WL 5725546, at *6 (E.D.N.C. Aug. 11, 2015) (unpublished) (finding conservative treatment lends little support to claims of debilitating symptoms), *adopted by* 2015 WL 5737613 (E.D.N.C. Sept. 30, 2015).

As to Dr. Boyette's opinion regarding Claimant's physical issues, Claimant argues that the

18

ALJ erred by mischaracterizing the quality of Claimant's daily activities and by determining that the upper extremity restrictions were not supported by any complaints or objective findings. Pl.'s Mem. [DE-32] at 16-18. The ALJ discounted the severe physical limitations imposed by Dr. Boyette because they conflicted with documented instances of Claimant performing activities inconsistent with those limitations, such as driving, using a bushax, and working on a truck. (R. 27). While Claimant correctly points out that the ALJ may not selectively discuss a claimant's activities, *see Hines*, 453 F.3d at 565-66, and the ALJ erred by relying on these activities where Claimant was injured performing them, Claimant's argument is without merit where Claimant did not injure himself as a result of his physical limitations. *See* (R. 833-June 2, 2013 emergency room treatment note describing Claimant's care after Claimant cut his toe while using a bushax); (R. 824-June 5, 2013 emergency room treatment note describing Claimant's care after Claimant cut his forearm on the blade of a truck engine); (R. 852-September 27, 2013 emergency room treatment note describing Claimant's care after Claimant was injured in a car accident when the vehicle he was driving was t-boned by another vehicle). The facts here are distinguishable from instances where claimants attempt to perform activities but are unable to complete them to due to their limitations or have to stop because of their pain. *See Hines*, 453 F.3d at 565-66 ("[t]his recitation of the evidence ignores Mr. Hines' further testimony that he has pain 'mostly all the time' and that taking Darvocet 'mak[es] it feel better and it's not really gone.'").

Additionally, Claimant's argument as to the upper extremity limitations asks this court to impermissibly re-weigh evidence already considered by the ALJ. *Hays*, 907 F. 2d at 1456. Claimant argues that he has numerous impairments that could result in upper-body limitations, and the ALJ erred by discounting Dr. Boyette's upper extremity limitations based on a lack of complaints or

19

objective findings showing pain in the upper extremities. Pl.'s Mem. [DE-32] at 17. Claimant may not point to his other impairments, however, and argue that the ALJ's conclusion is unfounded. *Frazier v. Astrue*, No. 4:06-CV-254-FL, 2008 WL 138050, at \*14 (E.D.N.C. Jan. 10, 2008) (unpublished). A review of Dr. Boyette's treatment notes shows that Claimant did not complain of any upper extremity pain or problems, as noted by the ALJ. Accordingly, where a treating physician's opinion is inconsistent with his own treatment notes and other evidence of record, as is the case here, the ALJ may give the opinion limited weight. *Dunn*, 607 F. App'x at 269 (citing *Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014)). Although there is some evidence in the record which would lend support to Dr. Boyette's opinion, such as Claimant's degenerative disc disease, there is more than a "scintilla of evidence" supporting the ALJ's decision to afford little weight to this opinion. *Id.* at 271 (concluding the ALJ did not err in affording limited weight to a treating source opinion where "there is more than a 'scintilla of evidence' in the record supporting the ALJ's conclusion that [the physician's] opinion is incongruent with both his own treatment notes and some of the other medical evidence in the record."). Thus, substantial evidence supports the ALJ's consideration of Dr. Boyette's opinion.

### iii.    State Agency RFC Assessments

The record also includes the RFC assessments compiled by the State Agency physicians as part of the consideration of Claimant's case at the initial and reconsideration levels. (R. 74-86, 88-101). Claimant argues that the ALJ erred in weighing these opinions by assigning weight to certain limitations in a pick and choose fashion and ignoring the responsibility to accept and include or reject and explain the opinions, by ignoring the fact that similar psychological limitations were included in every medical opinion of record, and by erroneously relying on the fact that restrictions

20

imposed by the physicians were not supported by medical findings showing increased pain with

certain movements. Pl.'s Mem. [DE-32] at 10-11, 17-18.

The ALJ discussed the mental RFC assessments as follows:

Finally, in accord[ance] with the guidelines in SSR 96-6p, I have carefully considered the residual functional capacity assessments completed by the State Agency and the findings of fact made by the State Agency and other program physicians regarding the nature and severity of the claimant's impairments. These assessments have been considered as expert medical opinions of non-examining sources. The State Agency psychological consultants both opined the claimant had mild limitation in activities of daily living, moderate limitation in ability to maintain social functioning and ability to maintain concentration, persistence, or pace, and no episodes of decompensation of extended duration. Both concluded the claimant could perform simple, routine, repetitive tasks (Exhibits B3A and B5A).

I give only some weight to both assessments. I note firstly that while both consultant psychologists found moderate limitation in ability to maintain social functioning, as well as moderate limitations regarding contact with the public, accepting instructions and criticism from supervisors, and getting along with coworkers, neither consultant included any social limitations in their narrative statements describing the claimant's work abilities (both consultants remarked "[the claimant] is capable of interacting with the public and accepting criticism from supervisors. [He] could respond appropriate (sic) to criticism and interact appropriately with fellow coworkers."). Since neither consultant added any social limitations in their narrative, I give little weight to their opinions regarding a marked limitation in maintaining social functioning. However, their opinions regarding simple work tasks and some limitation in maintaining attention and concentration are given great weight, as these opinions are consistent with the claimant's performance on Dr. Shelton's testing, Dr. Shelton's opinions, and the claimant's past work history.

(R. 19-20). As to the physical RFC assessments, the ALJ stated:

The State Agency physician opined the claimant was able to perform sedentary work with occasional climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, occasional performance of all other postural activities, and no concentrated exposure to hazards (Exhibit B5A).

This assessment is given partial weight. The sedentary exertional limitation is supported by the claimant's consistent reports of low back and radiating left lower extremity pain and the exacerbation of this pain caused by prolonged standing, walking, and moving of weight. However, the postural limitations are not supported

21

by objective medical findings showing increased pain with such movements. I note that sedentary work inherently requires no significant stooping, which prevents excessive bending at the waist that could exacerbate the claimant's low back pain (*See* SSR 83-10).

(R. 27).

As an initial matter, Claimant's arguments that the ALJ erred by addressing the limitations contained in the state agency opinions in a pick and choose fashion because the ALJ must accept and include or reject and explain the opinion and by failing to explicitly address all of the factors discussed in 20 C.F.R. § 416.927, particularly the consistency with other opinions, are without merit. *Bundy*, 2015 WL 450915, at \*5; *Ware*, 2012 WL 6645000, at \*2. The question for this court is whether the ALJ's discussion of the state agency opinions "is adequate for the court to conduct a meaningful review." *Bundy*, 2015 WL 450915, at \*5. As to the state agency opinions about Claimant's mental impairments, the ALJ discounted their findings that Claimant had a marked limitation in maintaining social functioning because the narrative section of those opinions did not support that limitation. (R. 19-20). Indeed, while both Dr. VanderPlate and Dr. Mayhew indicated that Claimant was moderately limited in his ability to "interact appropriately with the general public," "accept instructions and respond appropriately to criticism from supervisors," and " get along with coworkers or peers without distracting them or exhibiting behavioral extremes," when asked to describe those social interaction limitations in narrative form, they both stated that "[Claimant] is capable of interacting with the public and accepting criticism from supervisors. [Claimant] could respond appropriately to criticism and interact appropriately with fellow workers." (R. 83, 97-98). The ALJ may properly discount the "check the box" portion of the state agency opinion when those limitations are not consistent with the narrative portion. *Blum v. Comm'r, Soc.*

22

*Sec. Admin.*, No. SAG-12-1833, 2013 WL 2902682, at *2 (D.Md. June 11, 2013) (unpublished) ("[T]he relevant portion of the physicans' opinion is not Section I, which sets forth a series of 'check the box' rankings, but Section III, which provides a detailed narrative functional capacity assessment.") (citing Program Operations Manual System ("POMS") § DI 34510.060B, https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060).

The ALJ gave great weight to the conclusions that Claimant could perform simple work tasks and that he had some limitation in maintaining attention and concentration, finding that those limitations were consistent with Claimant's performance on Dr. Shelton's testing, Dr. Shelton's opinions, and Claimant's past work history. (R. 20). The consistency and supportability of a physician's opinion are factors that are properly considered pursuant to 20 C.F.R. § 416.927. *See Johnson*, 434 F.3d at 654. As discussed above, Dr. Shelton opined that Claimant would be able to understand, retain, and follow instructions, and during testing, Claimant demonstrated adequate immediate retention and recall, delayed recall, and recent memory. (R. 438-39). Claimant also testified that he stopped working due to injuries, not mentioning any problems interacting with coworkers. (R. 39-40).

As to the state agency opinions about Claimant's physical impairments, the ALJ noted that the sedentary exertional limitation was consistent with Claimant's repeated complaints of low back and radiating left lower extremity pain, and the exacerbation of this pain caused by standing, walking, and moving weight. (R. 27). The record evidence supports the ALJ's reasoning, as Claimant routinely complained to Dr. Boyette about low back pain and radiating pain in his left leg and Dr. Boyette indicated that Claimant had trouble with movement in his notes. (R. 473-74-April 25, 2011 treatment note); (R. 470-71-July 12, 2011 treatment note); (R. 462-November 7, 2011

23

treatment note); (R. 656-57-January 12, 2012 treatment note); (R. 779-January 17, 2013 treatment note). The ALJ noted, however, that the postural limitations were not supported by objective medical findings showing increased pain with such movements but in any event, "sedentary work inherently requires no significant stooping, which prevents excessive bending at the waist that could exacerbate the claimant's low back pain (*See* SSR 83-10)." (R. 27). During an examination with Dr. McAvoy on October 14, 2011 at the Rocky Mount Orthopaedics & Sports Medicine Center, Dr. McAvoy noted that Claimant had chronic low back pain and used a cane to ambulate, but had 5 out of 5 strength in his lower extremities, complaints of discomfort with a straight leg raise on the left side, 5 out of 5 strength in all groups, and no gross malalignment that could be clinically appreciated. (R. 460). Further, a review of the medical record evidence does not indicate that Claimant complained of increased pain with postural movements such as stooping, kneeling, and crouching, such that limitations on performing such movements would be appropriate. The consistency and supportability of a physician's opinion with the medical evidence of record are factors that are properly considered pursuant to 20 C.F.R. § 416.927. *See Johnson*, 434 F.3d at 654. Further, a sedentary work limitation inherently limits a claimant to sitting for approximately six hours total in an eight-hour workday, and "[b]y its very nature, work performed primarily in a seated position entails no significant stooping." S.S.R. 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). Accordingly, where the ALJ relied on the consistency and supportability of the state agency opinions, substantial evidence supports the ALJ's consideration of those opinions.

Finally, Claimant argues that the ALJ erred in considering the medical opinion evidence by failing to recontact the medical sources or seek a consultative examination after rejecting consistent limitations opined by every medical expert of record, and instead relying on his lay analysis of the

24

raw medical data. Pl.'s Mem. [DE-32] at 11-12. The ALJ may order a consultative examination to attempt to resolve an inconsistency in the evidence or when the evidence is insufficient to make a disability determination. 20 C.F.R. § 416.919a(b). The decision to order a consultative examination is within the discretion of the ALJ. *See Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003) (per curiam) (unpublished) ("[T]he ALJ has discretion in deciding whether to order a consultative examination.") (citing 20 C.F.R. § 404.1519a). Here, there was no need for a consultative examination because the record contained sufficient evidence regarding Claimant's impairments for the ALJ to reach a decision as to whether Claimant was disabled. *See White v. Colvin*, No. 5:13-CV-00757-RN, 2015 WL 1438747, at *10 (E.D.N.C. Mar. 27, 2015) (unpublished) (concluding a consultative examination was not required because there was substantial evidence in the record for the ALJ to conclude the claimant was not disabled) (citations omitted). The fact that the ALJ discounted limitations consistent among the various medical opinions does not require the ALJ to obtain another opinion. *See Clontz v. Astrue*, No. 2:12-CV-00013-FDW, 2013 WL 3899507, at *7 (W.D.N.C. July 29, 2013) (unpublished) (rejecting argument that the ALJ was required to obtain a consultative examination because the ALJ gave only some weight to claimant's treating physicians and to the state agency's non-examining physicians' mental assessments). Accordingly, where there was substantial evidence in the record for the ALJ to make a disability determination, the ALJ did not err by failing to recontact a medical source or seek a consultative examination.

**B.    The ALJ's Determination of Claimant's Mental RFC**

Claimant contends that the limitation to unskilled work does not account for his moderate limitation in concentration, persistence, or pace, relying on *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). Pl.'s Mem. [DE-32] at 12-14. The Government argues in response that this case is

25

distinguishable from *Mascio* because the ALJ provided an adequate explanation for how the RFC limitation accounted for Claimant's moderate limitation in concentration, persistence, or pace. Def.'s Mem. [DE-34] at 21-26. In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitation in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). The court explained that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court also indicated that there could be instances where a limitation in concentration, persistence, and pace does not affect the Claimant's ability to work and would be appropriately excluded from the RFC. In such circumstances, however, an explanation from the ALJ is required. *Id.*

Here, the ALJ credited the opinion of Dr. Shelton that Claimant would be able to understand, retain, and follow instructions and of the state agency doctors that Claimant would be able to perform simple, routine, and repetitive tasks. (R. 18-19). And as discussed above, substantial evidence supports the ALJ's decision to afford little weight to Dr. Shelton's conclusion that Claimant may have difficulty sustaining attention to perform simple tasks. (R. 18). During testing with Dr. Shelton, while Claimant "showed decreased memory and concentration and attention abilities," he was still performing at an "essentially average" level. *Id.* The ALJ further noted that "[t]o account for the distracting nature of chronic pain and the [C]laimant's demonstrated deficits in memory and concentration, the undersigned limited the [C]laimant to performance of unskilled work. The [C]laimant's past work history, medical treatment and exam findings, and opinion

evidence as discussed above all indicate he can perform work within these parameters." (R. 27). Thus, in this case, it is evident from the ALJ's decision that the limitation to unskilled work adequately addressed Claimant's ability to stay on task, which is distinguishable from the facts in *Mascio. See Belton v. Colvin*, No. 1:14CV777, 2015 WL 5023087, at *7 (M.D.N.C. Aug. 24, 2015) (unpublished) (distinguishing *Mascio* where consultative examined opined that "although Plaintiff struggled with maintaining concentration, persistence, and pace, she was not precluded from understanding, retaining, and following instructions and not precluded from performing simple, routine, repetitive tasks"), *report and recommendation adopted by* 2015 WL 5712732 (M.D.N.C. Sept. 29, 2015). Accordingly, the ALJ properly accounted for Claimant's moderate difficulties in maintaining concentration, persistence, and pace in the RFC.

## C.    The ALJ's Application of the Grids

Claimant argues that if the ALJ had credited his non-exertional limitations, the ALJ could not have relied on Rule 201.24 of the Grids to determine that Claimant was not disabled, and remand is thus appropriate to determine the extent to which the non-exertional limitations would erode the unskilled sedentary occupational base. Pl.'s Mem. [DE-32] at 19-20. In response, the Government argues that substantial evidence supports the ALJ's determination that Claimant did not have any non-exertional limitations beyond the limitation to unskilled work. Def.'s Mem. [DE-34] at 26-27. Claimant's argument here is without merit, where it is derivative of his earlier arguments as to the ALJ's consideration of the medical opinion evidence and Claimant's mental limitations. As discussed above, substantial evidence supports the ALJ's consideration of those issues.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-31] is

27

DENIED, Defendant's Motion for Judgment on the Pleadings [DE-33] is ALLOWED, and Defendant's final decision is affirmed.

So ordered, this the 31st day of March, 2016.

Robert B. Jones, Jr.
United States Magistrate Judge